*1320 OPINION.
MoRRis:
The pleadings present but two issues for our determination— (1) whether the petitioner is entitled to personal service classification; (2) if such classification is denied, whether its profits tax should be computed under section 328. At the hearing and by brief, counsel for the petitioner suggested that if personal service classification is denied, then the actual value of its contract with the Coca-Cola Bottling Co. as of the date of incorporation, should be included in invested capital, but no motion to amend the petition so as to include this issue .therein was made. The primary purpose of pleadings is the joinder of issues between the parties. Issues attempted to be raised by brief, or orally at the hearing, will be disregarded. Appeal of Dixie Manufacturing Co., 1 B. T, A. 641; Appeal of W. P. Weaver, 2 B. T. A. 709.
The principal contention of the petitioner is its claim for personal service classification. Where a corporation seeks benefits conferred *1321 by the statute, it must bring itself within its provisions. One of the requirements for a personal service classification is that capital shall not be a material income-producing factor. The actual investment in the business in 1903 by the partners was $5,500. The table of gross earnings shows the development of the vending of bottled Coca-Cola in the territory in which petitioner had the contractual rights. By 1915, this contract had become very valuable, due to a large extent to the efforts of the partners, and could no doubt have been sold for a most substantial profit. Just what the actual value of the contract was at the time the same was turned in for stock, we are unable to state. Only $5,000 of capital stock was issued for the contract and good will in 1915, whereas the contract alone had been purchased in 1903 for $5,500 cash. Between 1903 and 1915 the partners had netted substantial profits through the subcontracts which they had secured for the bottling and selling of Coca-Cola in the territory covered by their principal contract. Their principal asset was the contract under which they were assigned the right to bottle and vend Coca-Cola. They did no bottling or vending of Coca-Cola themselves. Their services consisted in seeing that the contracts were carried out and in advertising and pushing bottled Coca-Cola. Such personal services as they rendered were for the purpose of further capitalizing their contract. Their profits were limited only to the extent which they were able to exploit the contract within their prescribed territorial limits. There can be no doubt, therefore, that this. contract constituted capital, that it had value in 1915 much in excess of its original cost; and that it was a material income-producing factor.
Under the contract the petitioner agreed to buy Coca-Cola syrup from the Atlanta Company at $1.20 per gallon which it sold to its subcontractors at prices ranging from $1.35 to $1.50. The differential constituted the petitioner’s profits. In other words it is the difference between what the syrup cost and what it sold for that made the operating profit. Under such circumstances it is our opinion that the petitioner was dealing as a principal.' Considering only the syrup which the petitioner ordered, however, the facts show that the gross income therefrom exceeded that from the syrup ordered by the subcontractors directly from the Atlanta Company, the -figures for the years in question being for 1918, $23,901.20 and $11,471.45, respectively; for 1919, $45,510.70 and $17,915.50, respectively; and for 1920, $25,388.56 and $15,010.99, respectively. To the extent of that business at least there can be no question but that the petitioner was dealing as a principal, and therefore not entitled to personal service classification, as 50 per cent or more of its gross income was derived therefrom.
*1322 The remaining contention of the petitioner is that it should be granted special assessment. We find no evidence in the record of an abnormality. The only evidence from which such a finding could be inferred is the statement of earnings and a comparison of the .same with the capital invested, but large profits from a small amount of capital invested is not such an abnormality as is contemplated in the statute.
It also appears that the Commissioner made a comparison with representative concerns and found that the rate of profits tax computed under the provisions of section 302 of the Revenue Act of 1918 is less than that paid by such representative concerns. The petitioner offered no comparatives so we are unable to determine what relief, if any, it would be entitled to, if - its profits tax were computed under section 328 of the Revenue Act of 1918.

Judgment will he entered for the respondent.